UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

NEUROSURGICAL CONSULTANTS OF
SOUTH FLORIDA, L.L.C., a Florida limited
liability company,

    Plaintiff,

vs.

CIGNA HEALTH AND LIFE INSURANCE
COMPANY, a foreign corporation,

    Defendant.
_____/

## COMPLAINT

Plaintiff, NEUROSURGICAL CONSULTANTS OF SOUTH FLORIDA, L.L.C. ("**Plaintiff**"), a Florida limited liability company, sues Defendant, CIGNA HEALTH AND LIFE INSURANCE COMPANY ("**Defendant**" or "**Cigna**"), a foreign corporation, and alleges as follows:

### Nature of Action

1. This action arises out of Defendant's failure to reimburse, or reimburse at an unreasonably low rate, Plaintiff for medical services Plaintiff provided to a patients, L.M., Z.O., K.S., H.S. T.S., and G.S. (collectively, the "**Patients**"), covered under health insurance policies issued, insured, operated, and/or administered by Defendant.

2. Plaintiff provided medically necessary services to the Patient consisting of emergency and non-emergency care and surgical management on a variety of neurological

1

conditions of the brain and spine (the "**Services**"), as more specifically set forth in **Exhibit "A"** attached and incorporated herein.

3. Plaintiff performed the Services with the understanding and expectation that Defendant would reimburse it at rates equal to the fair market or reasonable value of the Services pursuant to the requirements of Florida law.

4. For the claims at issue in this action, Plaintiff was a non-participating provider with Defendant and, as a result, did not agree to accept discounted rates from Defendant for the Services and did not agree to be bound by Defendant's reimbursement policies or rate schedules.

5. Nevertheless, Defendant has not paid Plaintiff the fair market or reasonable value of its services.

6. The impact of Defendant's nonpayment on the claims at issue is considerable and has left a balance due from Defendant exceeding the minimum jurisdictional limits of this Court.

## Parties

7. Plaintiff is a Florida professional limited liability company with its principal place of business located in Palm Beach County, Florida.

8. Upon information and belief, the Patients are resident of the state of Florida.

9. Defendant is a foreign for-profit corporation registered to do business in the state of Florida. At all material times, Defendant was a health insurer and/or health claims administrator actively engaged in the transaction of health insurance servicing in the state of, including in Palm Beach County, Florida.

## Jurisdiction and Venue

10. The amount in controversy exceeds the sum of $75,000.00, exclusive of interest, costs, and attorneys' fees.

11. Defendant operates, conducts, engages in, and carries on business in the state of Florida and has offices and agencies throughout the state of Florida.

12. Venue is proper in Palm Beach County, Florida, because the Plaintiff provided the medical services at issue to the Patients in Palm Beach County and because the payments to Plaintiff for the Services were due in Palm Beach County, Florida.

## Facts

13. Plaintiff, through its physicians, provides medical services, including conservative care and surgical management on a variety of neurological conditions of the brain and spine to patients in Palm Beach County, Florida.

14. Plaintiff's physicians are licensed medical doctors practicing in the State of Florida.

15. Plaintiff's physicians specialize in newest techniques for the treatment of neurological conditions of the brain and spine.

16. Furthermore, Plaintiff's physicians are bound by their professional ethics and the medical standard of care to not only render emergency treatment, but also provide continuity of care in the interest of the patient.

17. In exchange for premiums, fees, and/or other forms of compensation, Defendant agrees to administer claims and provide reimbursement for healthcare services rendered to members of its health insurance policies.

18. At all material times, the Patients were each members of health insurance policies issued, insured, and administered by Defendant, which policies provided coverage for services received by Patient and provided in the State of Florida (the "**Policies**").

*Patient L.M.*

19. On or about August 31, 2020, Ronald L. Young, M.D., with the assistance of Martin Greenberg, M.D., both employed by Plaintiff, performed medically necessary services on L.M.

20. As such, Plaintiff submitted a Health Insurance Claim to Cigna for the charges totaling eighty thousand dollars ($80,000.00) for Dr. Young's services and eighty thousand dollars ($80,000.00) for Greenberg's services, but Cigna denied coverage, claiming the services were experimental.

### *Patient Z.O.*

21. On or about April 17, 2020, Z.O. was admitted to Delray Medical Center on an emergency basis, and was seen by Dr. Young, who is employed by Plaintiff.

22. A CT of the patient's brain showed a large right temporal intracerebral hemorrhage adjacent to the sylvian fissure. Accordingly, Dr. Young determined that the patient needed an emergency surgery.

23. On April 18, 2020, prior to the surgery, an MRI of the patient's brain also showed a possible aneurysm and cerebral angiogram.

24. On the same day, Dr. Young performed the emergency surgery, including craniectomy evacuation of the hematoma and stereotaxis procedures on the skull.

25. Based on the foregoing, Plaintiff submitted a Health Insurance Claim to Cigna for the charges totaling forty-five thousand dollars ($45,000.00). However, Cigna only paid Plaintiff seven thousand six hundred nineteen dollars and ninety-five cents ($7,619.95) for the claim.

### *Patient K.S.*

26. On or about December 20, 2020, K.S. was admitted to Delray Medical center on an emergency basis after sustaining a fall.

27. A CT of K.S.'s brain showed a large right sided holohemispheric extra-axial hemorrhage, probably subdural blood measuring maximal width of 2.8 cm, along with associated mass effect upon the right parietal lobe near the vertex in the right frontal lobe and an effacement of the frontal horn of the right lateral ventricle.

28. On or about December 23, 2020, Lloyd Zucker, M.D., who is employed by Plaintiff, performed a right craniotomy for subdural hematoma on K.S. on an emergency basis.

29. Based on the foregoing, Plaintiff submitted a Health Insurance Claim to Cigna for the charges thirty thousand dollars ($30,000.00). However, Cigna only paid Plaintiff six thousand dollars ($6,000.00) for the claim.

### *Patient H.S.*

30. On or about December 23, 2020, Plaintiff performed medically necessary services on H.S.

31. Accordingly, Plaintiff submitted a Health Insurance Claim to Cigna for the charges totaling fifty thousand dollars ($50,000.00). However, Cigna denied the claim and has failed or refused to pay any portion thereof.

### *Patient T.S.*

32. On or about November 4, 2020, Plaintiff sought Cigna's authorization to perform posterior lumbar spinal fusion and laminectomy on T.S., along with related services.

33. On November 12, 2020 Cigna denied Authorization No. IP0679713385, noting that lumbar fusion was considered not medically necessary when performed for the treatment of spinal stenosis *in the absence of spinal instability*.

34. However, Cigna issued Authorization No. OP0685276798 for CPT 63047 (removal of spinal lamina – lumbar) and advised Plaintiff that if, while in the operating room, the surgeon

found that the patient needed fusion, Plaintiff would need to contact Cigna to change the authorization from outpatient to inpatient surgery.

35. On November 16, 2020, Evan M. Packer, M.D, with the assistance of Lawrence C. Meiner, P.A., both employed by Plaintiff performed surgery on T.S.

36. While operating on T.S., Dr. Packer had to drill a significant portion of the patient's vertebral body due to the extensive calcification of the patient's discs and the narrowing of the spine, which caused the T.S.'s spine to become unstable.

37. Accordingly, Plaintiff contacted Cigna to obtain authorization to convert the surgery from outpatient to inpatient in order for Dr. Packer to proceed with lumbar fusion to stabilize the patient's spine. Cigna issued Authorization No. IP06926215295 and then Dr. Packer performed a lumbar fusion of patient, with Mr. Meiner's assistance.

38. As such, Plaintiff submitted a Health Insurance Claim to Cigna for the charges totaling one hundred thousand dollars ($100,000.00) for Dr. Packer's service and ninety five thousand dollars ($95,000.00) for Mr. Meiner's services, but Cigna denied coverage, claiming the serviced were not medically necessary.

39. Ultimately, following a second appeal, Cigna approved coverage upon determining that the services rendered to T.S. were covered under his benefit plan.

40. However, Cigna only paid Plaintiff four thousand nine hundred and eight dollars and eighty-four cents ($4,908.84) for the services rendered to T.S. by Dr. Packer.

### *Patient G.S.*

41. On or about December 11, 2019, G.S. was admitted to the emergency room at Delray Medical Center due to a cervical spine cord injury.

42. On or about December 18, 2019, Dr. Young, with the assistance of Dr. Greenberg, performed a C3-4 anterior cervical diskectomy infusion on G.S. to treat the cervical spine cord injury

43. Based on the foregoing, Plaintiff submitted a Health Insurance Claim to Cigna for the charges totaling ninety thousand dollars ($90,000.00) for Dr. Young's services and eighty thousand dollars ($80,000.00) for Dr. Greenberg's services. However, Cigna only paid Plaintiff ten thousand ($10,000.00) for the services rendered to G.S. by Dr. Young.

*Non-Payments and Underpayments by Cigna*

44. Defendant issued the remittance notices of its foregoing underpayments on the Claims to Plaintiff in Palm Beach County, Florida.

45. Plaintiff did not and does not have applicable participation agreements with Defendant, and thus the Claims are considered non-participating or out-of-network claims.

46. Plaintiff never agreed to accept discounted rates from Defendant or to be bound by Defendant's reimbursement policies or rate schedules with respect to the Claims.

47. The amounts Defendant paid to Plaintiff for the Services underlying the Claims do not correspond with the statutory language mandated under Florida law and usual and customary charges.

48. Defendant was and is aware that Plaintiff provided the Services to the Patients and billed Defendant for the medical services Plaintiff's physicians provided to the Patients with the expectation and understanding that its services had been approved by Defendant and that it would be reimbursed by Defendant.

49. Defendant's refusal to pay Plaintiff the fair market value and/or the reasonable value of the medical services Plaintiff provided to the Patients has caused Plaintiff to suffer

damages in an amount equal to the difference between the amounts Defendant paid on the Claims and the fair market value and reasonable value of the services Plaintiff provided, plus Plaintiff's loss of use of that money.

50. All necessary conditions precedent for Defendant to perform its obligations occurred or were performed, excused, and/or waived.

<u>Representations by Cigna.</u>

51. At the time that the Patients were provided the Services, each were covered by policies of health insurance insured by and/or administered by Cigna.

52. Prior to all non-emergent initial consultations with each new patient, Plaintiff contacted Cigna to verify that each patient was covered by a health plan insured by and/or administered by Defendant, and to obtain benefit information and pre-authorization for the services to be provided.

53. At the time of the verification of benefits or pre-authorization calls, Plaintiff did not have access to any of the various health insurance plans that covered the Services for the Patients.

54. Therefore, Plaintiff had to rely upon the information provided by Cigna indicating that the Services were covered services or covered benefits under each applicable insurance plan for each patient.

55. Thereafter, for each procedure performed or service otherwise provided, Plaintiff sent a bill for its services to Cigna.

56. Plaintiff continues to submit claims for reimbursement by Cigna, and the unpaid and underpaid claims continue to accrue.

<u>Cigna's Erroneous Billing Practices Caused Harm on Plaintiff</u>

57. Plaintiff's charges were in amounts that are usual and customary for providers providing similar services in the areas in which the surgeries were performed and represent reasonable values for services rendered.

58. Notwithstanding, Defendant has either not made any payment for the Claims or grossly underpaid the usual and customary rate for the medical services provided to the Patients, as identified in Exhibit "A."

59. Plaintiff is a non-participating, out-of-network provider and is thereby not subjected to any contracted rates or fee schedules with Cigna. Nor is Plaintiff subject to express contractual obligations that in-network, participating providers would be subject to pursuant to their contracts with Cigna.

60. Cigna was aware that Plaintiff, at all material times, was an out-of-network provider.

61. Defendant has failed to pay usual and customary charges to Plaintiff for the medically necessary procedures it provided to the Patients.

62. For claims not subject to Section 641.513(5), Defendant is obligated to pay Plaintiff under their implied contracts and the doctrine of *quantum meruit* the lesser of Plaintiff's billed charges or, if different, the reasonable value of the services Plaintiff's physicians rendered to Defendant's members.

63. Except for Patient H.S., Defendant has already adjudicated these claims and determined that all of the claims at issue in this action were for covered services rendered to Patient, and Defendant has already paid all of the claims at issue, albeit at amounts representing a mere fraction of the applicable shared savings rates for the services, the "usual and customary provider charges" for the services, and/or the reasonable value of the services. Thus, this action

concerns only the *rate of* payment and not the *right to* payment. The claims brought on behalf of K.S., G.S., T.S., and Z.O. do not include any claims in which benefits were denied, nor do they challenge any coverage determinations under ERISA. Furthermore, Defendant, as an out-of-network provider, does not seek payment under the plan.

### COUNT I – Claim for Benefits Under ERISA § 502(a)(1)
### (Patients L.M. and H.S.)

Plaintiff re-alleges and re-incorporates by reference paragraphs 1 through 63 as if fully set forth herein.

64. Plaintiff files this action pursuant to ERISA §502(a)(1)(B), 28 U.S.C. §1132, to recover benefits assigned to it by L.M. and H.S. under ERISA plans.

65. Plaintiff has provided medically necessary services to L.M. and H.S., as reflected on Exhibit A.

66. Upon information and belief, benefit plans for L.M. and H.S. are each an "employee welfare benefit plan" within the meaning of ERISA, 29 U.S.C. § 1002(1).

67. L.M. and H.S. assigned their rights to receive health benefits under their respective plans to Plaintiff.

68. As assignee of the applicable plans, Plaintiff is entitled to recover benefits due to L.M. and H.S., and enforce the rights of L.M. and H.S. under the terms of the plans.

69. In particular, as assignee of the plans, Plaintiff is entitled to reimbursement under the ERISA-governed plan for medical services provided to L.M. and H.S.

70. Upon information and belief, the applicable plans did not prohibit L.M. and H.S. from assigning theor rights to benefits under the plans to Plaintiff, including the right of direct payment of benefits under the plans to Plaintiff.

71. Upon information and belief, the plans require reimbursement of medical expenses incurred by L.M. and H.S. at usual, customary, and reasonable rates.

72. Defendant is obligated to pay for medically necessary services, covered services, or covered benefits as defined under the plan.

73. Defendant has breached the terms of the plan by refusing to make out-of network reimbursements for charges covered by the plan, in violation of ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). These breaches include, among other things, refusing to pay the usual, customary, and/or reasonable charges, or the prevailing fees or recognized charges, for the medically necessary services performed provided by Plaintiff to L.M. and H.S.

74. Pursuant to ERISA § 502(g), Plaintiff is entitled to recover its reasonable attorneys' fees incurred in pursuing this claim.

**WHEREFORE**, Plaintiff demands judgment against the Defendant for the benefits due under the ERISA plans for L.M. and H.S., together with interest, costs, reasonable attorneys' fees, and such other relief as the Court deems proper.

### COUNT II - Violation of Sections 627.64194(4) – Emergency Services
### (Patients K.S., G.S., T.S., and Z.O.)

Plaintiff re-alleges and re-incorporates by reference paragraphs 1 through 63 as if fully set forth herein.

75. Section 627.64194(4) of the Florida Statutes imposes a duty on Defendant, as an insurer to reimburse Plaintiff, a nonparticipating provider, for the Claims performed on an emergency basis pursuant to Section 627.64194(2).

76. Plaintiff has a private right of action under Sections 627.64194(4) to enforce the statutes' provisions against Defendant.

77. At all material times, Plaintiff was a non-participating emergency medical provider that provided services to patients insured by Cigna.

78. Plaintiff provided covered emergency medical services to Patients K.S., G.S., T.S., and Z.O.

79. Patients K.S., G.S., T.S., and Z.O. did not have the ability or opportunity to choose a participating provider who was available to treat them at the time Plaintiff provided the covered medical services to them because.

80. Plaintiff and Defendant did not mutually agree on a specific charge for any of the claims submitted for emergency services. Plaintiff did not agree to accept discounted rates from Defendant for the claims, nor did it agree to be bound by Defendant's reimbursement policies or rate schedules with respect to the claims.

81. Defendant violated Sections 627.64194(4) by failing to pay Plaintiff the "usual and customary provider charges for similar services in the community where the services were provided" for the Claims for Patients K.S., G.S., T.S., and Z.O.

82. As a result of Defendant's failure to fulfill its legal obligations to reimburse Plaintiff in accordance with Sections 627.64194(4), Plaintiff has suffered injury and is entitled to monetary damages from Defendant.

83. Plaintiff seeks compensatory damages, as permitted by applicable law, in an amount equal to the difference between the amounts Defendant paid to Plaintiff for the Claims for Patients K.S., G.S., T.S., and Z.O. and the fair market value of the medical services underlying those Claims, plus interest.

**WHEREFORE**, Plaintiff prays that this Court enter a judgment against Defendant and in favor of Plaintiff in an amount representing the difference between the amounts Defendant paid to

Plaintiff for the Claims for Patients K.S., G.S., T.S., and Z.O., and the fair market value of the medical services underlying those Claims, as determined by the finder of fact, together with an award of prejudgment interest, costs, and such other and further relief as the Court may deem just and proper.

### COUNT III – UNJUST ENRICHMENT
*(In the Alternative)*

Plaintiff re-alleges and re-incorporates by reference paragraphs 1 through 63 as if fully set forth herein.

84. Plaintiff conferred a direct benefit on Defendant by providing valuable medical services to the Patients, with the knowledge and/or approval of Defendant.

85. In exchange for premiums, Defendant owes its members, including Patients, an obligation to pay for the covered medical services the members receive.

86. Under Florida and federal law, Defendant is obligated to provide coverage for emergency and non-emergency services provided by out-of-network providers like Plaintiff.

87. Defendant derives a direct benefit from Plaintiff's provision of medical services to its members because it is through Plaintiff's provision of those services that Defendant fulfills its legal obligations to its members.

88. The medical services Plaintiff provided to the Patients were undisputedly covered because Defendant adjudicated and paid for those services, albeit at an amount less than the reasonable value of the services in the marketplace.

89. When Plaintiff provided covered medical services to the Patients, Defendant received the benefit of having its legal obligations to the Patients discharged.[1]

---

[1] See *Reva, Inc. v. Humana Health Ben. Plan of La., Inc.*, 2018 U.S. Dist. LEXIS 45560, at *8 (S.D. Fla. Mar. 19, 2018) finding on a motion to dismiss that "it would be inequitable for Defendants to be allowed to collect premiums from their members and subscribers in return for agreeing to properly reimburse providers like Plaintiff that render

90.     Defendant was aware of and implicitly approved Plaintiff's provision of covered medical services to the Patient because Defendant preauthorized Plaintiff's provision of services to the Patients.

91.     Defendant's liability as the party responsible for payment to Plaintiff for the Services it provided to the Patients is established by Defendant's determination that the services were covered and its payment for the Services, albeit at rates far below that to which Plaintiff is entitled.

92.     Defendant voluntarily accepted, retained, and enjoyed, and continues to accept, retain, and enjoy, the benefits conferred upon it by Plaintiff, knowing that Plaintiff expected to be paid the reasonable value of the Services in the marketplace.

93.     Defendant has failed to pay the reasonable value of the benefit conferred upon it by Plaintiff, in this case, the reasonable value of the Services provided to the Patients. As a result, Defendant has withheld for itself monies that should have been paid to Plaintiff for Plaintiff's services and has received an unjustified windfall.

94.     By refusing to pay Plaintiff, Defendant has been unjustly enriched.

95.     Under the circumstances set forth above, it is unjust and inequitable for Defendant to retain the benefit it received without paying the value of that benefit, *i.e.,* by paying Plaintiff the reasonable value in the marketplace of the medical services Plaintiff provided to the Patients.

---

covered medical services without paying the value thereof to Plaintiff."; *Surgery Ctr. of Viera, LLC v. Unitedhealthcare, Inc.*, 465 F. Supp. 3d 1211, 1224 (M.D. Fla. 2020) finding that the plaintiff provider had "conferred a direct benefit upon United by providing Patient C.R. with medical services such that United's failure to pay the 80% balance would unjustly enrich United."; *S. Baptist Hosp. of Fla., Inc. v. Celtic Ins. Co.*, 2018 U.S. Dist. LEXIS 112671, at *7, 10 n.3 (M.D. Fla. June 1, 2018) ("Plaintiff alleges that it conferred a benefit upon Defendant by supplying 'Covered Services to Subscribers which was the obligation of' Defendant. . .the undersigned recommends that Plaintiff's allegations are sufficient to proceed past the pleading stage.").

96. Plaintiff seeks compensatory damages, as permitted by applicable law, in an amount equal to the difference between the amounts Defendant paid to Plaintiff for the Claims and the reasonable value of the medical services underlying the Claims, plus interest.

**WHEREFORE**, Plaintiff prays that this Court enter a judgment against Defendant and in favor of Plaintiff in an amount representing the difference between the amounts Defendant paid to Plaintiff for the claims at issue and the reasonable value in the marketplace of the medical services underlying those claims, as determined by the finder of fact, together with an award of prejudgment interest, costs, and such other and further relief as the Court may deem just and proper.

### COUNT IV – QUANTUM MERUIT
(*In the Alternative*)

Plaintiff re-alleges and re-incorporates by reference paragraphs 1 through 63 as if fully set forth herein.

97. In addition, and/or in the alternative, at all times material, the Plaintiff has conferred a direct benefit upon Defendant by providing valuable continuity of care and/or inadvertent and/or services to the Patients, who are Defendant's members. In exchange for premiums, Defendant owes its members, like the Patients, an obligation to pay for the covered medical services they receive.

98. Defendant derives a direct benefit from Plaintiff's provision of covered services to Defendant's embers because it is through Plaintiff's provision of those services that Defendant fulfills its obligations to its members.

99. There is no dispute that the Services at issue that the Plaintiff provided to the Patients were covered services, because Defendant adjudicated them, determined they were covered services, and paid Plaintiff for them, except at an amount less than the fair value of the services.

100. When Plaintiff provide covered services to Defendant's members, including the Patient, Cigna receives the benefit of having its contractual obligations to its members are discharged.

101. Defendant has knowledge of the benefits the Plaintiff conferred on Defendant because, *inter alia*, Defendant adjudicated the Claims for such services and determined that they were covered services under the Policies

102. Defendant has voluntarily accepted and retained the benefits Plaintiff conferred on Defendant by providing covered services to the Patients because, *inter alia*, Defendant adjudicated the Claims for such services and determined that they were covered services under the Policies.

103. Defendant voluntarily accepted, retained, and enjoyed, and continues to accept, retain, and enjoy, the benefits conferred upon it by Plaintiff, knowing that Plaintiff expected and expects to be paid the fair value for its services. However, Defendant has failed to reimburse the Plaintiff the fair value of the Services the Plaintiff has rendered to the Patients at all times material hereto.

104. Under the present circumstances, it would be inequitable for Defendant to fail to reimburse the Plaintiff the fair value of the Services they rendered to the Patients, while retaining the benefits the Plaintiff conferred upon Defendant.

105. Defendant is therefore liable in *quantum meruit* to the Plaintiff for failing to reimburse the Plaintiff the fair value of the Services the Plaintiff rendered to the Patients with respect to each of the Claims.

106. Defendant owes Plaintiff as damages the difference between the fair value of the services the Plaintiff rendered to the Patients and the amounts Defendant paid for those services.

**WHEREFORE**, Plaintiff prays that this Court enter a judgment against Defendant and in favor of Plaintiff in an amount representing the difference between the amounts Defendant paid to Plaintiff for the claims at issue and the reasonable value in the marketplace of the medical services underlying those claims, as determined by the finder of fact, together with an award of prejudgment interest, costs, and such other and further relief as the Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues so triable.

**DATED this August 11, 2022.**

Respectfully submitted,

**DI PIETRO PARTNERS, PLLC**
901 East Las Olas Blvd, Suite 202
Fort Lauderdale, FL 33301
*Primary Email Address:*
service@ddpalaw.com
*Secondary Email Address:*
nicole@ddpalaw.com
Telephone: (954) 712-3070
Facsimile: (954) 337-3824


/s/ *Nicole Martell*
**NICOLE MARTELL, ESQ.**
Florida Bar No.: 100172
nicole@ddpalaw.com
**LISANDRA ESTEVEZ, ESQ.**
Florida Bar No.: 111475
lisandra@ddpalaw.com